USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-2061 VLADIMIR COLLAZO-LEON, Plaintiff - Appellee, v. UNITED STATES BUREAU OF PRISONS, ET AL., Defendants - Appellants. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Carmen Consuelo Cerezo, U.S. District Judge] ___________________ ____________________ Before Selya and Boudin, Circuit Judges, ______________ and Carter,* District Judge. ______________ _____________________ Sean Connelly, Attorney, United States Department of _______________ Justice, with whom Guillermo Gil, United States Attorney, Mar a _____________ _____ Hortensia R os-G ndara, Assistant United States Attorney, and _______________________ Paul W. Layer, United States Bureau of Prisons, were on brief for _____________ appellants. Marcia G. Shein, with whom Law Office of Miller & Shein, was _______________ ____________________________ on brief for appellee. ____________________ April 7, 1995  ____________________ * Of the District of Maine, sitting by designation. ____________________ -2- CARTER, Chief District Judge. Appellee Vladimir CARTER, Chief District Judge ______________________ Collazo-Le n, a pretrial detainee at the Metropolitan Detention Center at Guaynabo, Puerto Rico, brought a habeas corpus action alleging that he had been denied both substantive and procedural due process by the United States Bureau of Prisons (BOP) when he was placed in disciplinary segregation for ninety days and had his telephone and visitation privileges taken away for six months as punishment for misconduct. After being placed in segregation, Collazo-Le n applied for a writ of habeas corpus which the magistrate judge recommended that the court deny. The district court disagreed and granted the petition finding that the practice violated substantive due process of law. The BOP appeals the district court's grant of a writ of habeas corpus to Collazo-Le n. FACTS FACTS _____ Collazo-Le n was named in eleven counts of a thirteen- count indictment, returned in the District of Puerto Rico, charging conspiracy to import and distribute cocaine. On April 7, 1994, while being held in pretrial detention, Collazo-Le n appeared before a disciplinary hearing officer (DHO), was informed of disciplinary charges against him, and, based upon an affidavit, was found to have attempted escape and to have offered a bribe to a prison guard to induce his assistance in Defendant's escape attempt. The charges for both acts arise out of the same set of facts: Collazo-Le n offered a prison guard one million dollars to get him "to the avenue." The sanction imposed by the -2- DHO for the attempted escape was sixty days of segregation and the loss of visiting privileges for six months. The sanction imposed by the DHO for the offer of a bribe was thirty days segregation and the loss of telephone privileges for six months.1 Collazo-Le n was placed in segregation and applied for a writ of habeas corpus, charging a denial of both substantive and procedural due process. 28 U.S.C. 2255. The magistrate judge found that Collazo-Le n had been afforded procedural due process and that the practice of placing a pretrial detainee in disciplinary segregation, and taking away his telephone and visitation privileges as punishment for misconduct, was permissible under the circumstances. Accordingly, the magistrate judge recommended that the district court deny the writ of habeas corpus. Despite this recommendation, the district court granted the writ, permitting Collazo-Le n's return to the general prison population before the end of his ninety-day segregation. The district court did not address the magistrate judge's finding on Collazo-Le n's claim for denial of procedural due process. Instead, the court directed all its attention to the substantive violation finding that the express intent of the prison regulation authorizing segregation was "punishment," 28  ____________________ 1 The terms of disciplinary segregation are to be served consecutively. The segregation consists of being placed in a room for twenty-three hours a day, with the remaining hour used for active or passive recreation. Collazo-Le n's loss of telephone and visiting privileges does not include any restriction of those activities which involve communication with his attorneys. -3- C.F.R. 541.20(a),2 and that "less drastic resources were not considered" as alternatives to the segregation and loss of privileges. The court concluded that the disciplinary action taken amounted to impermissible punishment and served no legitimate regulatory purpose in the effective management of the correctional institution. Thereafter, the district court denied the BOP's motion for reconsideration. The BOP now appeals the district court's decision. DISCUSSION DISCUSSION __________ The BOP argues that the district court expanded the principle established by the Supreme Court in Bell v. Wolfish, ____ _______ 441 U.S. 520 (1979), and created a rule that the Constitution prohibits the discipline of pretrial detainees. Collazo-Le n  ____________________ responds that the district court correctly found that the 2 Section 541.20(a) provides: Constitution prohibits disciplining pretrial detainees who Except as provided in paragraph (b) of this section, an inmate may be placed in violate prison rules in the manner imposed here because doing so disciplinary segregation only by order of the Disciplinary Hearing Officer amounts to impermissible punishment.3 To a great extent, both following a hearing in which the inmate has been found to have committed a prohibited act in the Greatest, High, or Moderate Category, or a repeated offense in the Low Moderate Category. The DHO may order placement in disciplinary segregation only when other available dispositions are inadequate to achieve the purpose of punishment and deterrence necessary to regulate an inmate's behavior within acceptable limits. 3 Collazo-Le n also argues that the case is moot because he is no longer a pretrial detainee but has pled guilty and was scheduled to be sentenced on February 16, 1995. The BOP responds that there remains a live controversy. In its brief, the BOP explains that if this Court reverses the district court, it intends to carry out the remainder of the ninety-day segregation term and the six-month telephone and visitation suspensions. We agree with the BOP that there remains a live controversy. -4- parties' arguments are built on semantics: labeling the action as either permissible discipline or impermissible punishment. This Court, however, does not find that there is any meaningful distinction between the terms "punishment" and "discipline" in this case. In Bell v. Wolfish, 441 U.S. 520, the Supreme Court ____ _______ examined some aspects of the constitutional rights of pretrial detainees. Bell teaches that punishment cannot be inflicted ____ upon pretrial detainees prior to an adjudication of guilt in accordance with due process of law. The inquiry, however, does not end with the designation of a condition of confinement as "punishment." To distinguish between impermissible and permissible measures, the Bell Court stated: ____ A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. See Flemming v. ___ ________ Nestor, [363 U.S. 603,] at 613-617. . . . ______ [I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal -- if it is arbitrary or purposeless -- a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua ___ detainees. Id. at 538-39 (footnotes omitted). ___ Bell was a class action seeking injunctive relief and ____ challenging various general conditions, practices, and policies -5- to which all pretrial detainees were subjected, including double- ___ bunking, strip-searches, and various other security measures. The conditions imposed on the pretrial detainees in Bell involved ____ no direct or individualized disciplinary or deterrent purpose. Here, by contrast, the segregation and loss of privileges are directly related to the exercise of the prison staff's disciplinary authority by both punishing Collazo-Le n for his institutional misconduct and deterring him from engaging in it in the future. In Bell, the Court was not faced with the situation ____ where discrete sanctions were imposed on individual pretrial detainees as discipline for specific in-house violations. Although factually distinguishable, the theoretical constitutional premises of Bell's analysis provides some rational ____ guidance in this case. On the authority of Bell, it may be divined that even ____ if a restriction or condition may be viewed as having a punitive effect on the pretrial detainee, it is nonetheless constitutional if it also furthers some legitimate governmental objective such as addressing a specific institutional violation and is not excessive in light of the seriousness of the violation. Bell, ____ 441 U.S. at 538-39; Youngberg v. Romeo, 457 U.S. 307, 320 _________ _____ (1982)(requiring that restrictions on the liberty of an involuntarily confined mental patient be reasonably related to legitimate government interests in imposing those restrictions). Among the legitimate objectives recognized by the Supreme Court are ensuring a detainee's presence at trial and maintaining -6- safety, internal order, and security within the institution. Bell, 441 U.S. at 540. If there is a reasonable relation between ____ the sanctions and legitimate institutional policies, an intent to punish the detainee for prior unproven criminal conduct cannot be ___________________________________ inferred. Accordingly, this Court must determine whether the punishment imposed here was incident to some legitimate governmental purpose. In this case, the district court looked at whether the sanction imposed on Collazo-Le n was of a "punitive" character. The court found it to be punitive, reasoning that because after Collazo-Le n serves his time in segregation, he will present "the same risk of flight and the same security hazard that he did when [the BOP] determined that his conduct justified placing him in isolation," the discipline did not serve the BOP's legitimate goal of providing a safe and orderly environment for inmates. This Court finds that statement by the district court particularly curious. Although Collazo-Le n may continue to be a risk to security after release from segregation that does not mean that legitimate governmental goals are not served by the disciplinary action. If the district court's statement regarding Collazo-Le n's continued security risk is taken to its logical conclusion, any type of discipline imposed would not be allowable because Collazo-Le n must, inevitably, be returned to the general prison population. This overlooks entirely any reasonable expectation that the discipline will have a deterrent effect on the Defendant. -7- The administrators of the prison must be free, within appropriate limits, to sanction the prison's pretrial detainees for infractions of reasonable prison regulations that address concerns of safety and security within the detention environment. The district court found that the severity of the sanction on the pretrial detainee for "whom no attempt is made to deal with his disciplinary problem by means of less drastic actions, compel[s] the conclusion that the purpose in segregating is to punish." We agree that the measure is punishment, but we disagree that it is improper under the circumstances of this case. The Supreme Court has warned that when determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion, courts must heed our warning that '[s]uch considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.' Id. at 540-41 n.23 (quoting Pell v. Procunier, 417 U.S. 817, 827 ___ ____ _________ (1974)). This recognition is a clear approval of a broad exercise of discretion by prison authorities to take reasonable and necessary action, including punishment, to enforce the prison disciplinary regime and to deter even pretrial detainees from violation of its requirements. What the Constitution prohibits is the undue expansion of the exercise of such authority for the -8- purpose, or with the unintended effect, of punishing the pretrial detainee for the acts that are the basis for his prosecution and his consequent pretrial detention. In other words, reasonable punishment may be imposed to enforce reasonable prison _______ disciplinary requirements but may not be imposed to sanction prior unproven criminal conduct. Recognizing the need to accord prison officials considerable latitude in matters of internal discipline, we will not interfere with the execution of reasonable means, such as the internal discipline effort involved here, adopted by the BOP to achieve a legitimate governmental objective. We cannot say that the sanctions imposed, in light of the seriousness of the violations, were so extreme as to be unreasonable by the constitutional standard. For the reasons discussed above, the district court's grant of the writ of habeas corpus on the substantive due process grounds is VACATED. The case is REMANDED to the district court _______ ________ to determine whether Collazo-Le n's right to procedural due process was violated.4  ____________________ 4 Collazo-Le n's attorney argues that she did not know that on May 23, 1994, the magistrate judge was going to hold a hearing on the merits of the habeas corpus petition. Rather, she "believed that the only issue to be considered [at the hearing] was releasing petitioner from sanctions until proceedings relating to due process and constitutional issues could be presented in more detail by all parties." Response to Magistrate's Report and Recommendation (Docket No. 11) at 2. This appears to be a reasonable conclusion given the magistrate judge's Order to Show Cause (Docket No. 7). That Order provides, in part: The Warden, Metropolitan Correctional Facility, Guaynabo, is ordered to show cause in my courtroom on Monday, May 23, 1994, at 10:00 a.m., why petitioner -9-  ____________________ should not be released from disciplinary confinement pending resolution of the 2241 motion now before the court. Petitioner and respondent are granted until May 26, 1994, to file memoranda of law on the only other issue before the court, whether a pretrial detainee can be administratively punished during such detention without the benefit of even a cursory hearing to determine his innocence or guilt of such charges. On May 23, 1994, the magistrate judge held the hearing and filed his recommended decision in the matter including the merits of the procedural due process violation. The recommended decision was docketed on May 24, 1994. The implication from counsel's argument is that she was not prepared at the hearing to present all evidence on the issue of the procedural due process violation. The district court, as noted above in the text, did not address this issue. On remand the district court should extend a de novo review to this aspect of the magistrate judge's __ ____ decision. -10-