**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

**No. 99-31242**

---

**ANDREW J. FRANK,**

**Plaintiff-Appellant,**

**v.**

**JERRY LARPENTER, Sheriff; CHAD MONROE;**
**GLENN PRESTONBACK; SCOTT EKISS**

**Defendants-Appellees,**

---

**Appeal from the United States District Court for the**
**Eastern District of Louisiana**

---

October 3, 2000

Before JOLLY, JONES and SMITH, Circuit Judges.

EDITH H. JONES, Circuit Judge:[*]

Appellees Chad Monroe, Glenn Prestonback, and Scott Ekiss were members of a prison disciplinary board that punished prisoner Andrew Frank for misconduct.  Frank brought suit under 42 U.S.C. § 1983, alleging that the board members violated his due process rights because one board member was not impartial.  Frank also sued Sheriff Jerry Larpenter for failure to train the other appellees. The district court dismissed Frank's suit for failure to state a claim.  Frank appeals.  We affirm.

---

[*]     Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

BACKGROUND

Frank is a prisoner in Louisiana. The events relevant to this action occurred shortly after Frank arrived at the Terrebonne Parish Criminal Justice Complex (TPCJC), while he was still a pretrial detainee. Appellee Larpenter is sheriff of TPCJC, and appellees Monroe, Prestonback, and Ekiss are correctional officers there.

Frank arrived at TPCJC on December 11, 1998. On that same day, Monroe, Prestonback, and Ekiss presided as a disciplinary board to hear charges that Frank violated TPCJC regulations. Monroe was chairman of the board. Frank had previously filed a civil suit against Monroe that ended in a settlement. The pleadings and the record do not clearly indicate the date of the previous lawsuit, the nature of the claim, or the terms of the settlement. Frank asked Monroe to recuse himself because of the previous lawsuit. Monroe refused. Frank's sentencing form indicates that Frank pled guilty to the offense. The board then sentenced him to sixty days in administrative lockdown. During this period, Frank was confined in his cell for twenty-three and one-half hours per day and had limited hygiene and visitation privileges.

Frank then filed suit under 42 U.S.C. § 1983. Frank alleged that the board was not impartial because Monroe was biased. He also sued Sheriff Larpenter for failure to train the board

properly, since the board punished Frank with knowledge of Monroe's alleged bias. The district court dismissed Frank's suit for failure to state a claim. Frank appeals.

## STANDARD OF REVIEW

We review dismissals for failure to state a claim de novo. *See Kennedy v. Tangipahoa Parish Library Bd. of Control*, 2000 U.S. App. LEXIS 20159 (5th Cir. 2000). District courts should avoid such dismissals "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). We view the facts in a light most favorable to Frank. *See Shipp v. McMahon*, 199 F.3d 256, 260 (5th Cir. 2000). We liberally construe his pro se brief. *See Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994).

## DISCUSSION

### I. AS A PRETRIAL DETAINEE, FRANK WAS ENTITLED TO THE SAME PROCEDURAL PROTECTIONS AS CONVICTED PRISONERS AT HIS DISCIPLINARY HEARING.

In general, the rights of pretrial detainees differ from those of convicted prisoners. Under the Due Process Clause, "a detainee may not be punished prior to an adjudication of guilt." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (describing the test to determine when restrictions on pretrial detainees are punitive). This is because "[a] person lawfully committed to pretrial detention has not been adjudged guilty of any crime." *Id.* The

3

government may, however, subject pretrial detainees to "the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Id.*

The administrative lockdown in this case was punitive, but Frank's punishment was for acts he committed during his detention rather than for his original crime. Other circuits have held that pretrial detainees are not immune from prison disciplinary actions. *See Rapier v. Harris*, 172 F.3d 999, 1003 (7th Cir. 1999) (holding that prison officials could place a pretrial detainee in disciplinary segregation); *Mitchell v. Dupnik*, 75 F.3d 517, 524 (9th Cir. 1996) (same); *Collazo-Leon v. United States Bureau of Prisons*, 51 F.3d 315, 318 (1st Cir. 1995)(same). These courts state that prison officials can impose reasonable punishment to enforce reasonable disciplinary requirements so long as the punishment is not for prior unproven conduct. *See Collazo-Leon*, 51 F.3d at 318.

Frank's situation thus does not resemble cases in which pretrial detainees suffered deprivations of liberty from the natural conditions of their confinement, or from wanton acts of prison staff. *See, e.g., Scott v. Moore*, 114 F.3d 51 (5th Cir. 1997) (en banc) (finding no deliberate indifference by a municipality where a staff member sexually assaulted a detainee); *Hare v. City of Corinth*, 74 F.3d 633 (5th Cir. 1996) (en banc)

4

(finding no deliberate indifference by prison staff where a detainee committed suicide). Our inquiry therefore is not whether the challenged acts were episodic, or whether the appellees were deliberately indifferent.[1] To look only for deliberate indifference by board members at a disciplinary hearing would give pretrial detainees less due process protection than we give to convicted inmates. We must determine instead whether the board violated Frank's due process rights as a pretrial detainee.

As unconvicted citizens, pretrial detainees deserve at least the protections of convicted inmates at a disciplinary hearing. *See Rapier*, 172 F.3d at 1004 (requiring a due process hearing before officials can discipline detainees); *Mitchell*, 75 F.3d at 524 (same). The question here is whether pretrial detainees are entitled to *more rigorous* procedural due process protection.

The few courts that have addressed this issue indicate that they are not. *See Mitchell*, 75 F.3d at 525 (looking to see if officials satisfied standard prisoner due process requirements at a disciplinary hearing for a detainee); *Spicer v. Johnson*, 1997 U.S. Dist. LEXIS 7095 at 13 (N.D. Ill. 1997) (same).

---

[1] This Court facially looked for deliberate indifference in a similar case. *See Edwards v. Johnson*, 209 F.3d 772, 779 (5th Cir. 2000) (finding no deliberate indifference where a deportation detainee challenged procedures at his disciplinary hearing). *Edwards*, however, went on to determine that the hearing satisfied the detainee's due process rights, which is the approach we use today.

5

The best approach is to treat pretrial detainees and convicted inmates equally at disciplinary hearings. To evaluate the extent of individual due process rights, we must determine "the precise nature of the government function involved as well as the private interest that has been affected by government action." *Wolff v. McDonell*, 418 U.S. 539, 560 (1974). The government function of maintaining security and order at prison facilities is identical in either case. The private interests are also equivalent. Both detainees and convicted prisoners face only a difference in the quality of their confinement at a disciplinary hearing. Their interests are "qualitatively and quantitatively" different from parole revocation proceedings, for example, where parolees have greater due process rights because complete revocation of their liberty is at stake. See *id.* at 561. Frank therefore is entitled to the same due process protections as convicted prisoners at a disciplinary hearing.

## II. THE LAW OF THIS CIRCUIT PRECLUDES FRANK'S CLAIM THAT HIS DISCIPLINARY BOARD WAS BIASED.

We now look to see if the appellees violated Frank's due process rights. Frank asserts that in light of his previous lawsuit against Monroe, Monroe's presence on the disciplinary board violated his due process right to an impartial decisionmaker. Although Monroe has the right to an impartial disciplinary board, "prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts." *Allen*

6

*v. Cuomo*, 100 F.3d 253, 259 (2nd Cir. 1996) (holding that a disciplinary surcharge did not create an incentive for board members to find inmates guilty). To prevail, Frank must assert that the board presents "such a hazard of arbitrary decisionmaking that it should be held violative of due process of law." *Wolff v. McDonnell*, 418 U.S. 539, 571 (1974) (holding that a prison time adjustment committee was sufficiently impartial).

This Court has held that a disciplinary panel can punish an inmate even where the inmate has previously filed an unrelated grievance against a panel member. *See Adams v. Gunnell*, 729 F.2d 362, 370 (5th Cir. 1984) (involving an unsuccessful race discrimination grievance against the panel member). Although here Monroe was the chairman of the board and actually settled a lawsuit with Frank, the material circumstances of that case are present. *Adams* extends to this case.

Other circuits have approached impartiality in different ways, and in some of these circuits Frank might state a claim. The Eighth Circuit has held that a disciplinary committee might be biased where the defendant filed a suit against the chairman on behalf of another inmate several days prior to the hearing. *See Malek v. Camp*, 822 F.2d 812, 816 (8th Cir. 1987). The Seventh Circuit has stated that prison adjustment committee members that are defendants in unrelated lawsuits could be biased, and remanded to evaluate the circumstances of the suits. *See Redding v.*

7

*Fairman*, 717 F.2d 1105, 1113 (7th Cir. 1983). In contrast, the Third Circuit considers prison tribunals impartial unless a member is directly involved in the circumstances underlying the charge. *See Rhodes v. Robinson*, 612 F.2d 766 (3rd Cir. 1979) (holding that the presence of an officer of the guards on the committee did not destroy impartiality). These rulings are not controlling and do not uniformly contradict our decision.

It is potentially relevant that the chairman of the disciplinary board that punished Frank settled a previous lawsuit with him. Nonetheless, Monroe's potential bias does not present such a danger of arbitrary decisionmaking that it violates due process in this context. Frank is entitled to a fair tribunal, "but the extent of impartiality in prison disciplinary proceedings must be gauged with due regard to the fact that they 'take place in a closed, tightly controlled environment' in which 'guards and inmates co-exist in direct and intimate contact.'" *Adams*, 729 F.2d at 370 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 561-62 (1974)). If prisoners can disqualify tribunal members through lawsuits, they will have too much power to dictate the composition of their board. *Redding*, 717 F.2d at 1113. This would also "heavily tax the working capacity of the prison staff." *Id.* We hold today that a prison disciplinary board does not violate due process by punishing a pretrial detainee who has settled an unrelated lawsuit with one of its members.

8

### III. BECAUSE MONROE'S PRESENCE ON THE BOARD DID NOT VIOLATE DUE PROCESS, FRANK CANNOT PREVAIL ON HIS CLAIMS AGAINST THE BOARD MEMBERS OR AGAINST SHERIFF LARPENTER.

Frank's claims against the board members relate to Monroe's failure to recuse himself and the board's decision to proceed in the face of Monroe's alleged bias. Since this was not a due process violation, Frank does not state a claim against the board members.

Frank's claim against Sheriff Larpenter for failure to train the board members is based on the same facts. "A supervisory official may be held liable under section 1983 for the wrongful acts of a subordinate 'when [the supervisory official] breaches a duty imposed by state or local law, and this breach causes plaintiff's constitutional injury.'" *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998) (quoting *Sims v Adams*, 537 F.2d 829, 831 (5th Cir. 1976). Frank has not alleged that Larpenter violated any laws, and there was no constitutional injury. Frank therefore cannot state a claim against Larpenter.

### IV. FRANK CANNOT FIRST RAISE A CLAIM FOR ASSISTANCE OF COUNSEL ON APPEAL.

Frank asserts that the conditions of his segregation deprived him of the assistance of counsel to defend himself. He did not present this argument to the district court, and cannot raise it for the first time here. *See Leverette v. Louisville*

*Ladder Co.*, 183 F.3d 339, 342 (5th Cir. 1999), *cert. denied*, 120 S. Ct. 982 (2000).

## V. CONCLUSION.

Frank cannot state a claim against any of the appellees. For the foregoing reasons, we AFFIRM.