**Trebian v. Merrimack County HOC    CV-99-4380-B  07/31/01**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Jerod Trebian</u>

v.

<u>Merrimack County House of</u>
<u>Corrections, et al.</u>

Civil No. 99-438-B
Opinion No. 2001 DNH 139


<u>**MEMORANDUM AND ORDER**</u>

Jerod Trebian, <u>pro se</u>, brings this action pursuant to 42

U.S.C. § 1983, seeking damages for alleged violations of his

Fourteenth Amendment due process rights that occurred during his

pretrial detention at the Merrimack County House of Corrections.

Trebian claims that, while he was a pretrial detainee, the

defendants[1]: (1) arbitrarily and capriciously determined his

classification status; (2) punished him excessively for minor

disciplinary violations without giving him an opportunity to

appeal; and (3) arbitrarily denied him the right to visit with

certain visitors.  The defendants have moved for judgment on the

pleadings, or in the alternative, for summary judgment.  For the

following reasons, I grant the defendants' motion for summary

---

[1]  The defendants are the Merrimack County House of
Corrections, Superintendent Carole Anderson, and Captain Jeffrey
Croft, a member of the Classification Board.

judgment.[2]

## I. STANDARD OF REVIEW

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue is one "that properly can be resolved only by a finder of fact because [it] ... may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A material fact is one that affects the outcome of the suit. See id. at 248.

In ruling on a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-movant. See Oliver v. Digital Equip. Corp., 846 F.2d 103, 105 (1st Cir. 1998). The party moving for summary judgment,

---

[2] I analyze this motion as a motion for summary judgment because: (1) the defendants have submitted an affidavit and various other factual materials; (2) I rely on those materials in assessing Trebian's claims; and (3) Trebian treats the motion as a motion for summary judgment in his objection. See Fed. R. Civ. P. 12(c).

however, "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] ... which it believes demonstrates the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has properly supported its motion, the burden shifts to the nonmoving party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996) (citing Celotex, 477 U.S. at 323). I apply this standard in resolving the defendants' motion for summary judgment.

## II. DISCUSSION

The due process clause prohibits a detainee from being punished for the offense that resulted in his detention until his guilt is determined at trial. See Bell v. Wolfish, 441 U.S. 520, 535 (1979). As the Supreme Court has recognized, however, "[n]ot every disability imposed during pretrial detention amounts to

'punishment' in the constitutional sense." Id. at 537. Therefore, a court must distinguish between punitive restrictions and permissible restrictions that are "reasonably related to a legitimate governmental objective." Id. at 538. Further, prison officials may punish a pretrial detainee for violations of the prison's disciplinary system without violating the due process clause, so long as the detainee is accorded procedural due process and the punishment imposed "is not excessive in light of the seriousness of the violation." Collazo-Leon v. United States Bureau of Prisons, 51 F.3d 315, 318-19 (1st Cir. 1995). Finally, the Supreme Court has recognized that "[t]here is, of course, a de minimus level of imposition with which the Constitution is not concerned," regardless of whether the imposition is motivated by an intention to punish. Bell, 441 U.S. at 539 n.21 (quoting Ingraham v. Wright, 430 U.S. 651, 674 (1977)).

With these standards in mind, I turn to Trebian's claims that defendants violated his right to due process by reclassifying him, punishing him excessively for several minor disciplinary infractions without giving him an opportunity to appeal, and restricting his right to visit with certain

-4-

visitors.[3]

## A. __Classification__

Trebian argues that the Classification Board (the "Board") violated his right to due process when it arbitrarily determined his classification status. I disagree.

The Merrimack County House of Corrections (the "MCHOC") classifies newly admitted inmates within three days of their incarceration using an objective classification system. After an inmate is admitted to the MCHOC, either the Assistant Superintendent or the Coordinator of Rehabilitation Services interviews the inmate to obtain information about both his criminal history and his substance abuse history. The Board, which consists of Captain Jeff Croft, the Assistant Superintendent, and the MCHOC's Coordinator of Rehabilitation Services, also performs a criminal background check and attempts to discern whether the inmate has any enemies in the prison. The

---

[3] Trebian bases his due process claim on his constitutional right not to be punished before trial for the offense that resulted in his detention. In certain circumstances, a pretrial detainee also may be able to base a due process claim on the deprivation of a liberty interest created by state law. See Sandin v. Conner, 515 U.S. 472, 483-84 (1995). Because Trebian has not alleged any facts that would support such a claim, I need not consider this line of cases in my analysis.

Board then uses a numeric grading system, which takes into consideration the inmate's pending charges, criminal record, educational background, and employment history, to determine whether the inmate will be classified as Minimum, Medium or Maximum Security. The Board meets weekly to review requests for changes in classification status or cell assignment and reviews each inmate's classification at least monthly and after each "major incident." The superintendent hears all appeals relating to classification matters.

In determining Trebian's initial classification status, the Board took into consideration his criminal record, the criminal charges for which he was being detained, his escape risk, his education, and his employment history. See Supplemental Aff. of Carole A. Anderson, Doc. No. 20, at Exh. D [hereinafter Supp. Aff.]. Based on this information, the Board determined through the numeric grading system that Trebian's classification scale score was 18.[4] See id. Because inmates with a classification

---

[4] The Board erred in initially determining that Trebian's classification was Minimum Security because it failed to consider his pending felony charge. If the Board had considered the pending felony charge, Trebian's classification scale score would have increased by 20 points. With a score of 38 Trebian would have been classified as Maximum Security. Inmates with a score

scale score between 5 and 19 are classified as Minimum Security, the Board classified Trebian as Minimum Security.  See Defs.' Mot. Summ. J., Doc. No. 13, at Exh. B, Inmate Classification Assignments D-110.

The Board did not act arbitrarily when it later changed Trebian's classification status to Medium Security.  On April 15, 1999, after Trebian had pleaded guilty to a major disciplinary charge, he requested that his classification be changed to Medium Security and that he be placed in a different day room.  See Supp. Aff., Doc. No. 20, at Exh. E.  The Board, therefore, changed Trebian's classification to Medium Security based on his "inability to adapt to [his] current dayroom assignment [and due to] disciplinary concerns with his present [Minimum] classification status."  Id. at Exh. F.

Trebian argues that there is no evidence in the record of any disciplinary action upon which his reclassification could be based.  This argument is a nonstarter because it was Trebian, himself, who requested the change in classification. Furthermore, the record shows that on April 10, 1999, Trebian

_____

of greater than 30 are classified as Maximum Security and those with a score between 20 and 29 are classified as Medium Security.

received a major disciplinary report for assaulting an inmate that would have supported his reclassification to Medium Security even if he had not himself requested reclassification. See id. at Exh. E.

Finally, the Board did not arbitrarily reclassify Trebian as Maximum Security on August 18, 1999. See id. at ¶¶ 10-13. The Board reclassified Trebian because he had been charged with a major disciplinary violation for possessing contraband on August 16, 1999, and because he posed a threat to internal security at the MCHOC. See id. at Exhs. H, I, J. Multiple corrections officers' reports indicated that Trebian threatened inmates and attempted to take control of his day room. See id. at Exhs. H, I.

The Board's actions, as described above, and the classification system, in general, are reasonably related to the legitimate government aims of preserving internal order, discipline, and security at the MCHOC. See Bell, 441 U.S. at 546-47; Collazo-Leon, 51 F.3d at 318. The Board reclassified Trebian because it reasonably concluded that he posed a threat to the maintenance of internal order and security at the MCHOC. Thus, I conclude that the Board's actions do not constitute

impermissible punishment and, therefore, the defendants did not violate Trebian's rights under the due process clause. <u>See</u> <u>Martucci v. Johnson</u>, 944 F.2d 291, 293-94 (6th Cir. 1991) (holding that the nonpunitive placement of a pretrial detainee in segregated confinement does not implicate a liberty interest protected by the due process clause). For the foregoing reasons, the defendants are entitled to summary judgment as to this claim.

## B. <u>Minor Disciplinary Violations</u>

Trebian claims that the defendants violated his substantive and procedural due process rights when they punished him excessively for minor disciplinary violations without giving him an opportunity to appeal.

### 1. <u>Substantive Due Process Rights</u>

The defendants sanctioned Trebian for minor disciplinary violations on three occasions. First, on April 20, 1999, Trebian lost contact visit, store, gym, and outside recreation privileges for 15 days after he was charged with possession of tobacco. <u>See</u> Supp. Aff., Doc. No. 20, at Exh. R. Second, after disobeying a corrections officer's order not to enter another inmate's cell, Trebian lost contact visit, store, gym, and outside recreation

privileges for 15 days on August 15, 1999. See id. at Exh. T. Lastly, on September 28, 1999, Trebian failed to stand for the inmate count and lost store, gym, and outside recreation privileges for 5 days. See id. at Exh. W. Trebian has not contested his guilt with respect to these charges.

Although the sanctions that defendants imposed on Trebian for his minor disciplinary violations qualify as punishment, they served the legitimate governmental objectives of maintaining safety and internal order at the MCHOC. Further, the sanctions were not excessive under the circumstances. Accordingly, the defendants did not violate Trebian's right to substantive due process when they administered the sanctions. See Collazo-Leon, 51 F.3d at 318.

## 2. Procedural Due Process Rights

Trebian also alleges that defendants violated his right to procedural due process because, on each of the three occasions described above, the same corrections officer issued his disciplinary report, decided its accuracy, and determined his punishment. He claims that these procedures violated his right to procedural due process because he was not given an opportunity to appeal.

### a. __Background__

The MCHOC classifies disciplinary violations as either "major" or "minor." When a corrections officer issues a minor violation report, he also recommends a penalty. Before issuing the penalty, a supervisor must review and approve both the report and the penalty.

Inmates may appeal both the grounds for a minor disciplinary report and the penalty assessed by submitting a written grievance to the superintendent. The superintendent must investigate the inmate's grievance and provide the inmate with a written copy of her findings and recommendations within five working days. Inmates also may appeal adverse rulings by the superintendent to the Merrimack County Board of Commissioners.

While the above-described procedure is outlined in the staff manual, it is not described in the inmate handbook. Moreover, Trebian asserts that defendants told him that he could not appeal his minor disciplinary violations.

### b. __Trebian's Claims Against the Individual Defendants__

The individual defendants argue that they are entitled to qualified immunity with respect to Trebian's procedural due

process claims.  I agree.

"Qualified immunity shields state officials exercising discretionary authority from civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have been aware." Souza v. Pina, 53 F.3d 423, 425 (1st Cir. 1995) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  When a court rules upon a claim of qualified immunity, it must consider "this threshold question:  Taken in the light most favorable to the party asserting the injury, do the facts alleged show [that] the [defendant's] conduct violated a constitutional right?" Saucier v. Katz, 121 S. Ct. 2151, 2156 (2001).

If the court determines that a defendant's conduct violated a constitutional right, it must next decide whether that right was clearly established.  See id.  For a right to be clearly established, "the law must have defined the right in a quite specific manner, and the announcement of the rule establishing the right must have been unambiguous and widespread," such that a reasonable official would understand that what he is doing violates the right.  Brady v. Dill, 187 F.3d 104, 116 (1st Cir. 1999).  In addition, a defendant does not lose the protection of

-12-

qualified immunity if he acts mistakenly, as long as his mistake was objectively reasonable, as qualified immunity is intended to protect "all but the plainly incompetent or those who knowingly violate the law." Veilleux v. Perschau, 101 F.3d 1, 3 (1st Cir. 1996) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

Trebian has failed to identify any case law that supports his claim that the due process clause clearly entitles him to a right to appeal a minor disciplinary report.[5] In Wolff v. McDonnell, 418 U.S. 539 (1974), the United States Supreme Court described an inmate's procedural rights when he is charged with a disciplinary violation that could result in a loss of good-time credits or a period of solitary confinement. See id. at 563-72. The Court went on to state that, "[w]e do not suggest, however, that the procedures required by today's decision for the deprivation of good time would also be required for the imposition of lesser penalties such as the loss of privileges."

---

[5] While I ordinarily should attempt to determine whether Trebian has stated a viable due process claim before examining the issue of whether the right on which he bases his claim was clearly established when the violation occurred, see Gardner v. Vespia, 252 F.3d 500, 502 (1st Cir. 2001), I decline to express a view on this difficult question because the issue has not been well briefed by either side and I have been unable to identify any controlling precedent that suggests a definitive answer.

Id. at 572 n.19; see also Fano v. Meacham, 520 F.2d 374, 378 (1st Cir. 1975) (stating *in dictum* that a hearing may not be required for a disciplinary report that results only in a temporary loss of privileges), rev'd on other grounds, 427 U.S. 215 (1976).  No subsequent Supreme Court decision has provided further guidance on the question of what procedures are required for the imposition of lesser penalties, and I could find no controlling precedent that resolves this issue.  Accordingly, the individual defendants are entitled to qualified immunity with respect to Trebian's procedural due process claims because the law on which Trebian bases his claims was not clearly established when the alleged violation occurred.

### c.   **Trebian's Claim Against the MCHOC**

Defendants argue that the MCHOC cannot be held liable for damages for violating Trebian's rights to procedural due process because Trebian has failed to demonstrate that the individual defendants were acting pursuant to a custom or policy when they told him he could not appeal his minor disciplinary reports.  I also agree with this contention.

An entity such as the MCHOC may not be held liable for

damages based on § 1983 unless the employees who allegedly violated the plaintiff's federal rights were acting pursuant to a "policy" or a "custom." See Board of County Comm'rs v. Brown, 520 U.S. 397, 403-04 (1997). An action is considered to be the result of a policy if either it was undertaken pursuant to a rule enacted by the entity's legislative body, or it was committed or authorized by a person with the final authority to establish policy for the entity. See Silva v. Worden, 130 F.3d 26, 31 (1st Cir. 1997). An action is deemed to be the result of a custom if it is consistent with a practice that is so wide-spread that it is deemed to have the force of law. See id.

Trebian has failed to establish that the individual defendants were acting pursuant to either a policy or custom of the MCHOC when they allegedly told him that he could not appeal his minor disciplinary violations. The MCHOC's official policy is to accord inmates who are sanctioned for minor disciplinary violations a right to appeal such sanctions initially to the superintendent and ultimately to the county commissioners. Trebian has not produced any evidence which suggests that the MCHOC had a secret policy that was contrary to its stated policy, nor has he demonstrated that the MCHOC had a custom of denying

-15-

inmates their right to appeal minor disciplinary violations.
Accordingly, he cannot maintain a claim for damages against the
MCHOC.[6]

## C. Visitation

Trebian argues that the defendants violated his due process
rights by arbitrarily depriving him of visits with his
girlfriend, Veronica McDevitt, and his sister, Carmen Trebian.
He claims that the defendants removed both women from his visitor
list based on "unrelated incidents" and due to his complaints
about the officers' treatment of these visitors.  To prevail on
this due process claim, Trebian must show that the restrictions
on his visiting privileges constituted punishment for the crimes
with which he was charged.  See Bell, 441 U.S. at 535; Collazo-
Leon, 51 F.3d at 317.  In analyzing this claim, I accord

_____

[6] To the extent that Trebian is claiming that the due
process clause requires that he be given notice of his right to
appeal a minor disciplinary violation or that it entitles him to
an adversary hearing on his minor disciplinary violations, I
reject his arguments.  I have found no case law that would
support the proposition that an inmate must be notified of his
appeal rights when he is subjected to sanctions for a minor
disciplinary violation.  Further, an inmate does not have a right
to challenge a minor disciplinary violation in an adversary
hearing if the violation results only in a temporary loss of
privileges.  See Boutchee v. Grossheim, 11 F.3d 101, 103 (8th
Cir. 1993).

substantial deference to the MCHOC administrators' execution of procedures which are needed to maintain internal order, discipline, and safety.  See Bell, 441 U.S. at 546-47.

There is no evidence in the record suggesting that the defendants restricted Trebian's right to visit with either McDevitt or Trebian to punish him for his pre-detention crimes. Rather, the record shows that their visits were restricted because of the need to maintain internal order and security at the MCHOC.  On multiple occasions, McDevitt ignored officers' instructions to end visits and to refrain from hugging and kissing Trebian and his brother during non-contact visits.  See Supp. Aff., Doc. No. 20, at Exhs. X, Y, BB, CC.  For example, on May 8, 1999 and July 3, 1999, McDevitt did not leave the visiting area when asked to do so because her visit had come to an end. In response to the latter incident, a corrections officer filed a report in which he stated that McDevitt should be banned from visiting indefinitely because she and Trebian cannot abide by the rules as they "want things done their way."  Id. at Exh. CC.  On at least one occasion, Carmen Trebian also refused to comply with a correction officer's request that she leave the visiting area. See id. at Exh. Y.

Because the restrictions on McDevitt and Trebian's visits were instituted to ensure compliance with the visitation rules, the restrictions were reasonably related to the legitimate government interests of maintaining internal order, discipline, and safety at the MCHOC.  See Bell, 441 U.S. at 546-47; Collazo-Leon, 51 F.3d at 318-19.  Accordingly, the defendants are entitled to summary judgment as to this claim.  See Bell, 441 U.S. at 535-39; Collazo-Leon, 51 F.3d at 318-19; Felch v. Hillsborough County Dep't of Corr., 2000 DNH 032, 5-6 (Feb. 8, 2000); cf. Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989) (holding that an inmate's interest in unfettered visitation is not guaranteed by the due process clause).

## III.  CONCLUSION

Defendants' motion for summary judgment, (Doc. No. 13), is granted.  I direct that the Clerk enter judgment in accordance with this order.

SO ORDERED.


_____
Paul Barbadoro
Chief Judge


July 31, 2001

cc:  Jerod Trebian, <u>pro</u> <u>se</u>
     John Curran, Esq.