Robert TORRES

v.

E. STEWART, et al.[1]

No. 3:00 CV 595 SRU WIG.

United States District Court,
D. Connecticut.

May 27, 2003.

---

1. The named defendants in the amended complaint are E. Stewart, Frank Crose, Remi Acosta, D. Shipman, Leonard Rubbo, Meyers, Giovanny Gomez, Brian K. Murphy, Dennis C. Coyle, Peter Matos and John Armstrong. When Torres filed his amended complaint, he omitted five defendants who where included in the original complaint. Thus, all claims against Tozier, Edward T. Arrington, J. White, John Doe and Jane Doe are deemed withdrawn.

Robert Torres, Suffield, CT, pro se.

Matthew B. Beizer, Attorney General's Office, Hartford, CT, for defendants.

### RULING ON MOTIONS FOR SUMMARY JUDGMENT

UNDERHILL, District Judge.

The plaintiff, Robert Torres ("Torres"), currently incarcerated at the Northern Correctional Institution in Somers, Con-

necticut, filed this civil rights action *pro se* and *in forma pauperis* pursuant to 28 U.S.C. § 1915. He alleges that, as a pretrial detainee, he was designated a Security Risk Group Safety Threat Member without receiving a hearing and confined in segregation from June 6, 1994, through April 22, 1997, in violation of his Fourteenth Amendment right to due process of law. Torres seeks damages as well as the restoration of forfeited good time credits. Pending are cross motions for summary judgment. For the reasons that follow, Torres' motion is denied and the defendants' motion is granted.

## I. *Standard of Review*

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *White v. ABCO Engineering Corp.*, 221 F.3d 293, 300 (2d Cir. 2000). A court should grant summary judgment " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact ....' " *Miner v. Glens Falls*, 999 F.2d 655, 661 (2d Cir.1993) (citation omitted). A dispute regarding a material fact is genuine " 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505), *cert. denied*, 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its]

case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

To defeat a motion for summary judgment that is supported by documentary evidence and sworn affidavits, a plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). He "must come forward with enough evidence to support a jury verdict in [his] favor, and the motion will not be defeated merely ... on the basis of conjecture or surmise." *Trans Sport, Inc. v. Starter Sportswear, Inc.*, 964 F.2d 186, 188 (2d Cir.1992) (citation and internal quotation marks omitted).

The court resolves "all ambiguities and draw[s] all inferences in favor of the non-moving party in order to determine how a reasonable jury would decide." *Aldrich*, 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). *See also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir.1992).

Where one party is proceeding *pro se,* the court reads the *pro se* party's papers liberally and interprets them to raise the strongest arguments suggested therein. *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994). Despite this liberal interpretation, however, a "bald assertion," unsupported by evidence, cannot overcome a properly supported motion for summary

judgment. *Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991).

## II. *Facts* [2]

In June 1994, Torres was incarcerated at the Hartford Correctional Center as a pretrial detainee. Correctional officials learned that Torres was a high-ranking member of the Latin Kings. Torres had been charged with the murder of a rival gang member. On June 9, 1994, the Department of Correction held a hearing to determine whether Torres should be designated a Security Risk Group Safety Threat Member ("SRGSTM"). Torres received notice of the hearing on June 7, 1994, and declined the assistance of an advocate. During the course of the hearing process, Torres stated that he intended to remain affiliated with the Latin Kings throughout his period of incarceration.

As a result of the hearing, Torres was designated SRGSTM and placed in the Department of Correction's Close Custody Program. This designation was reviewed by correctional security staff in July 1995, February 1996, September 1996, March 1997, and April 1997. Torres' progress through the Close Custody Program was impeded by his receipt of several disciplinary reports. In April 1997, however, Torres completed the Close Custody Program and was transferred to general population.

Torres commenced this action by complaint received by the court on March 29, 2000. He challenges the June 1994 SRGSTM designation and the June 1994 through April 1997 confinement in the Close Custody Program. Torres seeks damages and the restoration of lost good time credits.

## III. *Discussion*

Both parties have filed motions for summary judgment. These motions are considered below.

### A. *Torres' Motion for Summary Judgment*

In his motion for summary judgment, Torres restates the allegations in the complaint and argues that summary judgment should enter in his favor because the court denied defendants' motions to dismiss. The defendants oppose the motion on the ground that denial of a motion to dismiss is not a basis for granting summary judgment in Torres' favor.

To prevail on his motion, Torres must demonstrate that there are no genuine issues of material fact in dispute and that he is entitled to judgment as a matter of law. *See Miner v. Glens Falls,* 999 F.2d at 661. Torres has presented no evidence to support his claims other than his own declaration which repeats the allegations in the complaint. In opposition, the defendants have moved for summary judgment and supplied evidence showing the basis for the SRGSTM designation and demonstrating that the defendants complied with the procedures set forth in the administrative directives.

■ In addition, although the court denied defendants' previous motions to dismiss and motion for judgment on the pleadings, it has yet to review the merits of Torres' claims. Thus, Torres' assumption that the denial of these motions demonstrates his entitlement to summary judgment is without merit.

---

**2.** Although the court informed Torres of the requirements of a proper response to a motion for summary judgment, (*see* Doc. # 46), Torres did not file a Rule 56(a)1 Statement in support of his motion for summary judgment or a Rule 56(a)2 Statement in opposition to defendants' motion for summary judgment. Thus, the facts contained in the defendants Rule 56(a)1 Statement are deemed admitted. *See* D. Conn. L. Civ. R. 56(a).

■ Torres has presented no evidence to support his claim that his SRGSTM classification was intended as punishment and, therefore, unconstitutional. Thus, the court cannot conclude that Torres is entitled to judgment as a matter of law. Accordingly, Torres' motion for summary judgment is denied.

### B. *Defendants' Motion for Summary Judgment*

The defendants assert six grounds in support of their motion for summary judgment: (1) Torres cannot state a viable claim based upon his classification as SRGSTM; (2) Torres cannot state a viable claim for the restoration of good time credits; (3) this action is barred by the prior pending action doctrine; (4) this action is barred by the *Rooker–Feldman* doctrine; (5) the defendants are entitled to qualified immunity; and (6) Torres received due process when the classification decision was made.

### 1. *Restoration of Good Time Credit*

■ The court first considers Torres request for the restoration of good time credit that was lost and that he could have earned but for his confinement in the Close Custody Program.

In *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the Supreme Court determined that where a judgment in favor of the plaintiff would necessarily implicate the validity of the plaintiff's conviction or the length of his sentence, a cause of action under section 1983 is not cognizable unless the plaintiff can show that his underlying "conviction or sentence had been reversed on direct appeal, declared invalid by a state tribunal authorized to make such a determination, or called into question by the issuance of a

federal writ of habeas corpus." *Id.* at 487, 114 S.Ct. 2364. The Court has extended this holding to a challenge to the disciplinary hearing process afforded an inmate where a judgment in favor of the inmate would imply the invalidity of the punishment imposed, namely, the revocation of earned good time credit. *See Edwards v. Balisok,* 520 U.S. 641, 644–48, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997). Other courts have applied the holding of *Heck* to "'proceedings which call into question the fact or duration of parole.'" *Glenn v. Armstrong,* No. 3:93cv807(AHN), 1998 WL 241199, at *3 (D.Conn.1998) (quoting *Jackson v. Vannoy,* 49 F.3d 175, 177 (5th Cir.), *cert. denied,* 516 U.S. 851, 116 S.Ct. 148, 133 L.Ed.2d 93 (1995)).

Torres seeks the restoration of earned good time credits. A judgment in his favor would implicate the length of his sentence. Thus, these claims are not cognizable until the determination revoking the good time credits has been invalidated in the state courts.

In addressing these claims, the defendants argue that the claims are not cognizable because Torres filed a state habeas action on this issue and provide a copy of the decision of the state court denying the petition. After reviewing the state court decision, the court concludes that the defendants' arguments are without merit.

Torres' state petition concerned a SRGSTM designation made after a 1998 incident involving an assault on a member of a rival gang.[3] Following the guilty finding on the disciplinary charge, Torres was designated SRGSTM for a second time. The state court indicates that following his completion of the Close Custody Program in 1997, Torres renounced his gang affiliation and the SRGSTM designation was

---

**3.** Because the defendants did not provided a copy of the state habeas petition, the court relies upon the summary of the facts included in the state decision.

removed. *See* Defs.' Mem. Ex. G at 6 n. 2. While this action concerns the first designation, the state habeas action concerns the second designation and seeks restoration of good time credit lost as a result of the second classification and disciplinary process. Torres' confinement in close custody as a result of the first classification had concluded and his SRGSTM designation had been removed at the time he filed the state habeas petition. Thus, he could not have raised these issues in the state habeas action. Because the two actions concern two separate classification processes, defendants' arguments that this action is barred by the prior pending action doctrine and the *Rooker–Feldman* doctrine are without merit.

## 2. *Classification*

■ Defendants also argue that summary judgment is appropriate because Torres has no protected liberty interest in his classification.

■ Claims of a pretrial detainee in a state correctional facility are analyzed under the Due Process Clause of the Fourteenth Amendment. *See Bell v. Wolfish,* 441 U.S. 520, 535 & n. 16, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Because a pretrial detainee may not be punished for his alleged crime prior to conviction, the conditions of confinement of a pretrial detainee are constitutional unless they constitute punishment.[4] *See id.* at 535–37, 99 S.Ct. 1861. "Not every disability imposed during pretrial detention," however, "amounts to 'punishment' in the constitutional sense." *Id.* at 537, 99 S.Ct. 1861. "[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does

not, without more, amount to 'punishment.'" *Id.* at 539, 99 S.Ct. 1861.

The Supreme Court has held that maintaining institutional security and effectively managing the facility are examples of valid governmental objectives that could justify the imposition of restrictions on pretrial detainees. *See id.* at 540, 99 S.Ct. 1861; *see also Collazo–Leon v. United States Bureau of Prisons,* 51 F.3d 315, 318 (1st Cir.1995) ("On the authority of *Bell,* it may be divined that even if a restriction or condition may be viewed as having a punitive effect on the pretrial detainee, it is nonetheless constitutional if it also furthers some legitimate governmental objective such as addressing a specific institutional violation and is not excessive in light of the seriousness of the violation."). Further, the Supreme Court cautions the courts that the implementation of measures to maintain institutional security is "peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Bell,* 441 U.S. at 540 n. 23, 99 S.Ct. 1861.

■ A district court conducts a two-part inquiry when addressing the claims of a pretrial detainee: "(1) was [the detainee] deprived of due process under the Constitution; and (2) ... whether state law, by statute or regulation, gave rise to a liberty interest in remaining in the general population by prescribing mandatory procedures to govern placement in administrative segregation." *McFadden v. Solfaro,* No. 95 Civ. 1148(LBS), 1998 WL 199923, at *8 (S.D.N.Y. Apr.23, 1998) (citing *Covi-*

---

**4.** The court denied the defendants' second motion to dismiss because it could not determine at that stage of litigation whether Tor-

res' classification as SRGSTM was intended as punishment.

*no v. Vermont Dep't of Corrections*, 933 F.2d 128 (2d Cir.1991)).[5]

Torres was designated a Security Risk Group Safety Threat Member when he first came into the custody of the Department of Correction and was assigned to the Close Custody Unit for Security Risk Groups, a housing area for security risk group members. A security risk group is "[a] group of inmates, designated by the Commissioner, possessing common characteristics which serve to distinguish them from other inmates or groups of inmates and which as a discrete entity poses a threat to the safety of staff, the facility, other inmates or the community." Administrative Directive 6.14(3)(E).[6] A Security Risk Group Safety Threat Member is "[a]n inmate whose activity, behavior, status as a recognized Security Risk Group Leader, and/or whose activity, behavior or involvement in an event associated with a Security Risk Group jeopardizes the safety of the public, staff or other inmate(s) and/or the security and order of the facility." Administrative Directive 6.14(3)(G).

 Inmates do not have a constitutionally protected right to a particular classification. The Supreme Court has held that federal prisoners have no protected interest in their classification that would invoke due process protections, because Congress has given federal prison officials full discretion to determine prisoner classifications. *Moody v. Daggett*, 429 U.S. 78, 99 n. 9, 97 S.Ct. 274, 50 L.Ed.2d 236

(1976). Similarly, where state prison officials are given complete discretion in determining inmate classifications, state prisoners do not have any constitutionally or federally protected right to a particular classification. *See Madewell v. Roberts*, 909 F.2d 1203, 1207 (8th Cir.1990) (no due process issue in class status of prisoner where prisoner failed to point out any state statute, regulation or policy statement that limited prison officials' discretion in classifying prisoner).

As this District has previously held, the improper classification of inmates in the custody of the Connecticut Department of Correction does not give rise to a civil rights action. *See Green v. Armstrong*, No. 3:96cv1127(AVC)(TPS), slip op. at 10 (D.Conn. Feb. 25, 1998), *aff'd*, 189 F.3d 460 (2nd Cir.1999) (summary order). In *Green*, the district court noted that the state courts have found no state-created liberty interest in proper classification. *Id.* at 10 (citing *Santiago v. Commissioner of Correction*, 39 Conn.App. 674, 680, 667 A.2d 304, 307 (1995), for the proposition that improper classification does not deprive inmates of any legally recognized liberty interest). *See Wheway v. Warden*, 215 Conn. 418, 430–32, 576 A.2d 494 (1990) (holding that Commissioner of Correction retains discretion to classify prisoners to any security level and prison classification programs do not create any liberty interest or any constitutional entitlement to due process); *Miller v. Warden*, No. CV 000598372, 2000 WL 1258429, at *1

5. Although the Supreme Court has departed from this form of inquiry regarding conditions of confinement claims asserted by convicted inmates, *see Sandin v. Conner*, 515 U.S. 472, 483, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), that case did not concern the claims of pretrial detainees. To date, neither the Supreme Court not the Court of Appeals for the Second Circuit has determined whether that holding should be extended to claims of pretrial detainees. Other courts, however,

have held that the holding in *Sandin* is not applicable to pretrial detainees. *See Adams v. Galletta*, No. 96 CIV. 3750(JGK), 1999 WL 959368, at *5 (S.D.N.Y. Oct.19, 1999) (citing cases).

6. Copies of the current Department of Correction Administrative Directives are available on the Department's website. *See* http://www.doc.state.ct.us/ad.

(Conn.Super.Ct. July 21, 2000) ("The Connecticut case of *Wheway v. Warden,* 215 Conn. 418, 430–31, 576 A.2d 494 (1990), established in Connecticut that an inmate has no liberty interest in a particular security classification.").

■ Thus, Connecticut inmates have no state or federally created liberty interest in their classification. *See Allen v. Armstrong,* No. 3:98cv668(PCD), slip. op. at 2 (D.Conn. Sept. 15, 2000) (holding that the Due Process Clause affords prisoners no protection from erroneous classifications); *Nieves v. Coggeshall,* No. 3:96cv1799 DJSTPS, 2000 WL 340749, at *5 (D.Conn. Jan.31, 2000) (holding that inmate has no protected liberty interest in his classification); *United States v. Harmon,* 999 F.Supp. 467, 469–70 (W.D.N.Y. 1998) (holding that federal inmate has no liberty interest in any particular classification). *See also Pugliese v. Nelson,* 617 F.2d 916, 923–24 & nn. 5, 6 (2d Cir.1980) (no due process liberty interest in avoiding prisoner classification that delayed or precluded participation in institutional programs). Because Torres has no liberty interest in his classification, he fails to meet the second prong of the test. The defendants' motion for summary judgment is granted on the ground that Torres has no protected liberty interest that was violated by the defendants in this case.

■ Also, the evidence provided by the defendants shows that the classification decision was based upon concerns for institutional safety and security. In response, Torres has presented no evidence to support his allegation that the classification was punishment. In *Adams v. Galletta,* No. 96 CIV. 3750(JGK), 1999 WL 959368 (S.D.N.Y. Oct.19, 1999), the court granted the defendants' motion for summary judgment on a due process claim that a pretrial detainee was impermissibly housed in maximum security because the detainee

failed to present any evidence of a punitive intent. *Id.* at *4. Similarly, Torres has failed to meet his burden in opposition to the defendants' motion for summary judgment by presenting evidence that the classification decision constituted impermissible punishment. Thus, the defendants' motion should be granted on this ground as well. *See Frost v. Agnos,* 152 F.3d 1124, 1130 (9th Cir.1998) (granting summary judgment and rejecting claim that pretrial detainee was improperly classified as a close custody inmate because prison officials should be afforded wide latitude in classifying inmates and nothing in record suggested that institutional security classification system was not reasonably related to legitimate penological objective). *See also McFadden v. Solfaro,* 1998 WL 199923 at *8–9 (rejecting at summary judgment stage claims that pretrial detainee was unconstitutionally segregated from general population).

■ Finally, although neither party has provided copies of the Department of Correction Administrative Directives in effect at the time of the classification hearing, the court assumes that the due process requirements were not more rigorous than those contained in the current version of the directives. Directive 6.14, Security Risk Groups, requires that the notice and hearing requirements of Directive 9.5, Code of Penal Discipline be followed. Directive 9.5, sections 21, 25 and 27, requires that the inmate be afforded notice of the proceeding twenty-four hours in advance, assistance of an advocate and the opportunity to present witnesses.

The defendants have provided copies of the notice of classification hearing delivered to Torres on June 7, 1994, the determinations of the hearing officer made following the hearing on June 9, 1994, and the notification of SRGSTM designation as of June 16, 1994. These documents indi-

cate that Torres received notice of the hearing two days prior to the scheduled hearing date, declined to present witnesses and declined the assistance of an advocate. The hearing officer determined that, although he had demonstrated no gang involvement in the institution, Torres admitted being a soldier for the Latin Kings and was identified by law enforcement as a regional commander for the Latin Kings in Hartford prior to his incarceration. He had been arrested for the murder of a rival gang member and the Security Division determined that this charge could negatively impact the prison population and create tension among the various gangs if Torres were confined in general population. In addition, Torres stated that he intended to remain involved with the Latin Kings during his incarceration. *See* Defs.' Mem. Ex. A.

In response, Torres provides his own declaration repeating the allegations of the complaint. Torres argues that the process was improper because he did not receive a disciplinary report for security risk group affiliation until well after his classification. The challenged process, however, was a classification hearing, not a disciplinary hearing. Thus, the fact that Torres had not received a disciplinary report for gang affiliation is irrelevant. In addition, Torres' declaration, without supporting evidence is insufficient to oppose the defendants' motion for summary judgment. *See Trans Sport, Inc. v. Starter Sportswear, Inc.*, 964 F.2d at 188 (holding that party opposing motion for summary judgment must come forward with enough evidence to support a jury verdict in his favor). The court concludes that Torres was afforded due process in connection with his SRGSTM designation.

IV. *Conclusion*

For the foregoing reasons, Torres' Motion for Summary Judgment [doc. # 41] is DENIED and the defendants' Motion for Summary Judgment [doc. # 42] is **GRANTED**. The Clerk is directed to enter judgment in favor of the defendants and close this case.